OPINION
{¶ 1} This is an appeal from a termination of the parental rights of Veronica Wilks aka Veronia Stephens, mother of Gionni Wilks (D.O.B. 11-30-99), pursuant to a motion for permanent custody filed by the Stark County Department of Job and Family Services (SCDJFS).
 {¶ 2} This appeal is expedited and is being considered pursuant to App.R. 11.2.
 STATEMENT OF THE FACTS AND THE CASE {¶ 3} The father of the child is Jarvis Wilks.
 {¶ 4} Findings of Fact and Conclusions of Law filed May 12, 2005, found by the court were:
 {¶ 5} "1. This motion involves one child, six year old Gionni Wilks, D.O.B. 11-30-1999. The mother of the child is Veronica Wilks, AKA Stephens. The legal father of the child is Jarvis Wilks. The father did not appear for this hearing and has not appeared for any hearing nor worked a case plan in the matter herein.
 {¶ 6} "2. The present case initiated on January 14, 2005 when SCDJFS filed a complaint alleging abuse, dependency or neglect and requested emergency temporary custody of the child. Neither parent appeared for the shelter care hearing on January 18, 2005 and the child was placed in the emergency temporary custody of the agency. Both parents appeared for the pretrial and were appointed counsel. The child was found to be dependent on March 31, 2005 upon the stipulation of both parents and the child was placed in a foster home with temporary custody to SCDJFS.
 {¶ 7} "3. The court finds that neither parent appeared for the semi-annual review on July 29, 2005. Father appeared at the December 12, 2005 annual review but Mother was incarcerated at that time and did not appear.
 {¶ 8} "4. The caseworker testified that Mother had lost permanent custody of other children including the involuntary loss of one child. Further testimony was that — mother has not contacted the caseworker for some time and last visited with the child in August 2004.
 {¶ 9} "5. The caseworker further testified that mother has not completed her case plan objectives.
 {¶ 10} "6. The caseworker testified that Jarvis Wilks has not visited with the child since September 2005 and that was the only visit that ever occurred between the child and the legal father. The caseworker further testified that Father has not completed case plan objectives. She stated that the only urinalysis submitted by Father was positive for crack cocaine.
 {¶ 11} "7. The court finds that the agency made reasonable efforts to assist the parents to complete the case plan.
 {¶ 12} "* * *"
 {¶ 13} "The court finds that Gionni Wilks is an adoptable child. No relatives have maintained contact or visitation with the child and a homestudy of one relative was denied due to the relative's lack of cooperation with the homestudy process. Another homestudy is ongoing but the court finds that relative has not maintained contact with the child and has no bond with the child."
 {¶ 14} The Assignments of Error are:
 ASSIGNMENTS OF ERROR {¶ 15} "I. WHETHER THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 16} "II. WHETHER THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY TO SCDJFS IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENT OF THE EVIDENCE."
 {¶ 17} Both Assignments of Error are predicated on manifest weight and sufficiency of the evidence.
 {¶ 18} In reviewing the records under the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed." State v. Martin (1983), 20 Ohio App.3d 172. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The discretionary power to grant a new trial "should be exercised only in the exceptional case in which the evidence weights heavily against the conviction." Martin at 175. Because the trier of fact is in a better position to observe the witnesses= demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact." State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 19} State v. Jenks (1991), 61 Ohio St.3d 259, held that on review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. The weight to be given evidence and the determination of credibility of witnesses are issues for the trier of the facts, not the reviewing court.State v. Jamison (1990), 49 Ohio St.3d 182, cert. denied, 498 U.S. 881. Such standard is equally applicable to the issues presented here.
 {¶ 20} The controlling statute guiding the court on a motion to terminate parental rights is R.C. § 2151.414. It provides in part:
 {¶ 21} "The court shall conduct a hearing in accordance with section 2151.35 of the Revised Code to determine if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion. The adjudication that the child is an abused, neglected, or dependent child and any dispositional order that has been issued in the case under section 2151.353 of the Revised Code pursuant to the adjudication shall not be readjudicated at the hearing and shall not be affected by a denial of the motion for permanent custody.
 {¶ 22} "* * *"
 {¶ 23} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 24} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
 {¶ 25} "* * *"
 {¶ 26} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 27} "* * *"
 {¶ 28} "(2) With respect to a motion made pursuant to division (D)(2) of section 2151.413 of the Revised Code, the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest."
 {¶ 29} "* * *"
 {¶ 30} "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 31} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 32} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 33} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 34} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 35} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 36} "* * *"
 {¶ 37} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 38} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 39} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code;"
 {¶ 40} "* * *"
 {¶ 41} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;"
 {¶ 42} "* * *"
 {¶ 43} "(16) Any other factor the court considers relevant."
 I. {¶ 44} The First Assignment questions the court's determination that the child cannot be placed with the mother in a reasonable period of time.
 {¶ 45} As to this requirement, the court had before it that the mother was in a Federal prison due to drug related charges. (Tr. at 24).
 {¶ 46} The mother, according to the case plan had a long history of substance abuse.
 {¶ 47} Also, other children had been taken from her before. (Tr. at 18).
 {¶ 48} She voluntarily gave custody to a friend who, initially, was deemed responsible, but subsequently was found unsatisfactory.
 {¶ 49} During the attempt at a case plan devised to restore the child, the mother failed in several respects including non-compliance with a psychological evaluation, unstable employment and residency. (Tr. at 16).
 {¶ 50} Also, she had vanished for more than three months. (Tr. at 16).
 {¶ 51} The mother last visited the child in August, 2004. (Tr. at 12).
 {¶ 52} The child was in temporary custody since January 14, 2005. (Tr. at 12).
 {¶ 53} While some attempts were made as to the case plan, such were totally inadequate and the totality justified the court's finding by clear and convincing evidence that placement was not feasible within a reasonable period of time.
 {¶ 54} The First Assignment is not well taken.
 II. {¶ 55} The Second Assignment concerns the best interests of the child.
 {¶ 56} In regard to this Second Assignment of Error, we find no fault with the case law cited by Appellant, however, the record is replete with sufficient evidence that the best interest of the child warranted the conclusion reached.
 {¶ 57} Also, while the aunt, Danine Stephens, did express some interest in the child and a home study was commenced, she was uncooperative. (Tr. at 25). In addition, such aunt made no effort to contact the child. (Tr. at 31).
 {¶ 58} If further serious interest develops, the order of permanent custody would not prevent an adoption attempt. (Tr. at 31).
 {¶ 59} Therefore, we find the evidence sufficiently supports the finding by clear and convincing evidence that the best interests of the child were served by the order terminating parental rights.
 {¶ 60} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed at Appellant's costs.
Boggins, J. Wise, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.